We'll call our first case Quinn v. Avco Corporation 22-1596. Ms. Deavers, is that correct? Yes, Your Honor. How are you? Good morning. Before I get started, I would like to reserve five minutes for rebuttal. Sure. Whenever you're ready. May it please the Court, my name is Cynthia Deavers from Deavers-Miskellaw. I represent the appellant, Plaintiff-Below Joan Quinn, in relation with her loss of her husband, James Quinn, in an airplane accident that was caused by a failure of the engine due to what's known as a single-drive dual-magneto manufactured and rebuilt by Continental. When you say it was rebuilt, so I guess this really turns on that question. Was Continental operating at that point as a manufacturer? Rebuilding falls under Part 43 of the Federal Aviation Regulations, which governs maintenance procedures. Under 43.3J, manufacturers may, it's permissive, they may rebuild a magneto. It's not acting in its capacity as a manufacturer when it's rebuilding a magneto. It's essentially an overhaul to zero limits. Well, you know, let me just follow up on that. I agree that I think this 43.3J is an important provision because it says manufacturers may engage in a rebuild, but 43.3A suggests that no person may do anything, any of the actions identified, except as permitted below. And so it strikes me that if you read 43.3A in conjunction with 43.3J, A says you can't do anything except as permitted below, and J says manufacturers can rebuild. It strikes me that the only people that can rebuild are manufacturers, and therefore, if there's a rebuilding, it's being done in a manufactured capacity. Interestingly, and I think there's two parts to respond to Your Honor's inquiry. The first part is, interestingly, Continental itself denies being a manufacturer of this magneto. It attributes the manufacturer to Bendix, its predecessor, and then suggests that Kelly Aerospace overhaul, they suggest that they are perhaps a manufacturer and operating in that capacity. Again, when Congress wrote the Garris statute, it limited the scope of preemption to activities that were done outside of the scope, sorry, only within the scope of manufacturers acting as a manufacturer. If you look at the legislative history, notably House Report 103, Congress specifically contemplated this very example, and it's House Report 103-5252. And to quote from that, Congress limited the GARRA because it was intended to ensure that parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity. For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such was approximate cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic. So Congress specifically contemplated maintenance activities under Part 43 of the regulations and extorted them. I'm not so sure they said in a capacity as a mechanic. And then if we go to the regulations, we recognize that the only way that rebuilding can happen is by a manufacturer. That's the only way it can happen. And so it's very strange to say the only people that can ever engage in manufacturing, in rebuilding, are manufacturers, and then to say, aha, this person that did it didn't do so in their capacity as manufacturer. That strikes me as a disconnect.  As I understand the Constitution, only the president can veto legislation. Only the president. If legislation comes before him and he vetoes it, it would be strange to say he's acting in a legislative capacity or anything else like this. He's acting in his capacity as president because only the president can engage in that. Here, at least as I read the regulations, only a manufacturer can engage in rebuilding. And so it would strike me that any rebuilding is done in the capacity of being a manufacturer. Tell me why that's wrong. The way the regulations are set up, the activities that a manufacturer does in its capacity as a manufacturer falls under Parts 21. And with respect to engines and ignition systems, it's Part 33, which outlines duties that are required of manufacturers. Duties such as monitoring failures, ensuring that products that leave its quality assurance satisfy the drawings and specifications. But you agree that a rebuilt part is not a new part? Yes, Your Honor. Only manufacturers can rebuild a part, correct? Only manufacturers can rebuild a part, but it falls within their capacity as the maintenance aspect of what they're authorized to do. But if we accept that logic, wouldn't that eviscerate the statute? No, Your Honor. The purpose of GARA is to cut off the long-tail viability of manufacturers for parts that are manufactured beyond 18 years. The activities that are done, that were done... So if we accept your logic, every time they rebuild a part, would the statute start again? When you rebuild a part, our position is that GARA does not apply because it's the... Because of the rollover. It would just continue? No, it's two separate things. The first threshold that we're arguing is that GARA does not apply to activities done by an entity that are outside the scope as a manufacturer. So your position is they're operating as a mechanic? Yes. Yes. Under Part 43, which governs maintenance activities. As far as the rolling provision, we don't get to that point yet. The rolling provision applies to new components that were installed less than 18 years. Can I just ask another question about this Part 43? The title of a regulation part isn't always persuasive or good indicator of what's in it. But 43.3, the title is persons authorized to perform maintenance, preventative maintenance, rebuilding, and alterations. So doesn't Part 43, at least Part 43.3, govern rebuilding and in what capacity people operate when they rebuild an engine or other aircraft part? Part 43 does cover the rebuilding aspects that we're discussing here. Importantly, the purpose of GARA is to cut off the long tail liability with respect to parts manufactured longer than 18 years before an accident. When we have a maintenance activity in 2002 that is not within the scope of the manufacturer, which GARA is meant to protect, it's a new conduct. In 2002, they're taking an active role in rebuilding a part and selling replacement parts, which is not protected under GARA. Importantly, when the GARA statute was being created, it was done as a negotiation amongst the manufacturers and victims of aviation accidents. And the various provisions and the limitation to GARA to only apply to actions that manufacturers do in that capacity as a manufacturer is an important negotiation that Congress struck. And specifically, again in the House Report 103-525, Congress specifically considered manufacturers acting as a mechanic. And essentially when you rebuild a part, Continental, they took the Magneto, they cleaned it up, put it to new limits, and sold it in 2002. Aren't they also required under the provisions to test all the parts to make sure that they're all conforming to the standard of what the engine requires? This is more than just putting a new part in. It is from the point of view of the manufacturers making sure that this rebuilding is presenting a quality product that met the original standards. When a part is rebuilt, the mechanics who perform the rebuild, they do have to ensure that the rebuild is in accordance with the original standards. Similarly, when there's an overhaul, which is essentially an overhaul that was done by Kelly Airspace in this instance, they have to do the same sort of thing. They're following Continental specifications for an overhaul, and they're returning it to the field as an overhauled part. It's essentially an overhaul, it's essentially the same thing as a rebuild except for... Isn't it true that only a manufacturer can rebuild a part? That is true. I have five minutes for rebuttal, so thank you. Good morning, Your Honors. Good morning, Mr. Bagby. My name is John Bagby. I represent Continental Motors. I want to clear up what may be a misconception here about the rebuild. Your Honors have been very prepared in asking just the right questions about what a manufacturer can do and who can rebuild, and that's only a manufacturer. That's in the regs. But what's not clear here is, and I want to make it clear, is what the plaintiff is trying to do with the allegations around the rebuild. The plaintiff here is trying to claim that rebuild is outside the protection of GARA, and therefore GARA doesn't even apply at all. And then I think there's a second motive here that somehow rebuild triggers the rolling provision in GARA. So I think that the plaintiff has two purposes there. But in this particular case, it's important to understand that the motion for summary judgment was not decided in a factual vacuum. It was decided on the eve of trial on argument. We were going to try the case the next week, as a matter of fact. And it was decided with expert reports already in the bag. Expert testimony had already been given in deposition. And so the plaintiff's theory was very clear. And the expert reports, and this is in the oral argument in front of the district court, the experts only supported a case for design defect. The design of the original magneto that was put in the airplane in 1980. And that was designed and manufactured by Bendix, but Continental acquired the assets of Bendix, and therefore they acquired the rights and obligations to make sure that that design remained airworthy throughout the period. So what we have here is a design defect case. Plaintiff's case is that the magneto is defective by design. And it's really very simple. It's a single drive magneto, which the single drive drives two separate entities, which supply electrical spark in two separate ways. The plaintiff claims that's no good. There should be two separate magnetos. It's a very simple design defect case. And because the drive failed on the single drive, then both entities failed and there was no electrical spark to the engine. But it's a design defect case going to the original design of a 1980 airplane and the original design of a 1980 magneto. There are some facts about the rebuild that need to be made clear. This is not the case where Continental rebuilt a magneto, and then it was out there in the field, and then Kelly Aerospace two years later rebuilt that magneto or overhauled that magneto. That's not the way it happened at all. Kelly Aerospace did an overhaul, and they took a number that had been on the Continental rebuild, and they put that number on their magneto. The magneto that was on the airplane that crashed has nothing to do with the magneto that Continental built except a number. Even the plate that has the number on it was not put there by Continental. That was put there by Kelly Aerospace. Kelly Aerospace somehow got the rebuilt mag that had been rebuilt in 2002. They took it apart, put all the parts in their inventory, took the number and put it in their log. Then when they remanned or overhauled their magneto, they took all their parts from inventory, put them back together using overhaul specs, not rebuild specs, and put the Continental number on a plate that they, Kelly, put on. So Continental had no activity whatsoever with regard to this magneto that was on the plane at the time of the crash. The point I'm trying to make is there's no evidence in the record about what Continental did at the rebuild, because the records were just gone. It's not as if, and the plaintiff has never claimed, and there's no expert report that claims that. I'm sorry for interrupting, but isn't the issue before us maybe a little simpler than that? Because if whatever Continental did was in its capacity as manufacturer, and that may be unknown right now, but if whatever they did was in its capacity as manufacturer, then the combination of the regs and the statute result in victory for Continental, right? That's true. That's true. So this is all good background, but at one level, it's a sideshow if you just want to go right to the chase and say, this is all we need. But the only glitch I can see with that kind of straightforward resolution and victory for Continental is a point that your friend on the other side is kind of talking a bit about, but maybe hasn't said expressly, which is the statute is the one, GERA is the one that says in the capacity as manufacturer. And then there's regs that talk about the only people that can do things, that can rebuild, would be manufacturers. And so it seems to fit together that if you rebuild, you're in your capacity as manufacturer, but statutes and regs don't sit on the same plane. Statutes are more important than regs, and regs sometimes give meaning to statute, but it seems that the opening, the toehold that they may have would be if the statutory phrase in the capacity of manufacturer wants to use manufacturer in its common, ordinary meaning, such that it would not include rebuilding, and thus the need to look to regulations for clarity or guidance is nonexistent. What do you say to that? Well, I think as your honor pointed out earlier, the statutes specifically say only a manufacturer can rebuild, and that's because manufacturer has... The statute or the regs? The regs says that. The regs says that. And so I guess what I'm saying is why are we looking to the reg for who can rebuild if statutorily, if a common, ordinary meaning of the term manufacturer at the statutory level would not include rebuilding? You say a manufacturer isn't rebuilding, and so therefore when we say in your capacity as manufacturer, we can just look at that and ordinarily say if you're rebuilding a part with other used parts, you're not manufacturing that part. Thus, we don't need to read the regs to find out in what capacity you're in. The regs might be nice. They might be helpful, but the regs can't trump a statute. The FAA can't write more powerful law than Congress can, and so should we really just be looking at this phrase in its capacity as manufacturer first before we go to look to the regs? Well, we can look at it first, your honor, and when we do that, the common meaning of manufacturer is exactly what the rebuilder does. That is manufacturing. That's why it's different than overhauling. Those are two entirely different things, and it's the manufacturer that possesses all of the knowledge, all of the specs, and all of the testing capability to build to exactly new. The specifications for a rebuild are much, much tighter than they are for an overhaul. So a rebuild is a manufacturing process, and only the manufacturer can do it because only the manufacturer has all that data and expertise. So when a manufacturer rebuilds, it's acting as a manufacturer. Only a manufacturer can do that, and it's doing what it does. Does the statute distinguish between manufacturer and maintenance? The GARA? GARA does not exempt maintenance activities. GARA protects manufacturers, and in this case, Continental was and took over the obligations of Bendix when it acquired the rights. So Continental is responsible for the design, but there are activities the manufacturer does after design. For instance, publication of manuals. Those are GARA-protected activities. When a manufacturer acts in its capacity as a manufacturer, it's protected. And by the way, if we go back to GARA, and I don't think we focused much on this, GARA requires for the rolling sets, for the rolling provision to apply, that whatever was done within the 18-year period, there must be a new part added, and there's no allegation in this case that there are any new parts in the rebuild. There aren't any allegations about what happened in the rebuild at all. But it's clear, and the lower court found, that a rebuild is not new. It's not a new part, and there's no contest to that. So the rolling provision can never save the plaintiff's case from GARA. This is a 30-year-old airplane. The design was 30 years old, and they can't artfully plead or argue around GARA by saying, oh, a maintenance activity occurred in the form of a rebuild, and they haven't even alleged that anything was done wrong in the rebuild. It's just like an overhaul. If an overhaul doesn't add a new part, which caused the accident, the overhaul doesn't roll the statute. Otherwise, the statute would be eviscerated. I mean, there is a certain maybe just intuitive appeal to what they're arguing, because what they're saying is, okay, there's no new part added. It seems strange, then, to say there was a manufacturer of something if there's no new part added. If there was no new part added, it feels much more like there was maintenance on preexisting parts. No new part was added, so then where was the manufacturer of something new or different? Maybe it is best viewed as maintenance. And so it seems that we're kind of weaving in and out of statute and reg to say, ah, no new part was added, but that still isn't maintenance. The addition of no new part is still manufacture. And so there's a little up and down to that, yes? Your Honor, yes, I understand what you're saying, but the fact of the matter is that manufacturing is totally distinct from maintenance. In the aviation industry, it's two different things. Maintenance can be done by mechanics. They're trained to be A&Ps, and they're trained to a certain level. Manufacturing is a whole other level. And rebuilding a part and bringing it to absolutely new specs, as if it's a brand new, the specs are new, the performance is new, the testing is new, but the parts are not. And so that's a whole different level than what any maintenance shop can do. Maintenance can be performed in a hangar. Is there any limitation in GARA, in the statute, about what a manufacturer can do or cannot do? No, Your Honor, I don't think so. There are limitations in the regs. Is there a further clarification of what is not described in the statute? Your Honor, manufacturers are basically protected by GARA in their manufacturing capacity. Okay, but I'm concerned about the issue that's been brought up that we should just look at the statute. And because the statute does not limit or describe every activity that a manufacturer can perform, are the regs an important clarification of what is not described in the statute? Yes, Your Honor, they are important, they are. The regs say that mechanics can do certain things and manufacturers can do certain things. And the regs say manufacturers and only manufacturers can rebuild. So when they rebuild, they're acting in their manufacturing capacity. Then with that understanding, you go back to GARA and it says GARA protects manufacturers acting in their capacity as a manufacturer. It's really that simple. But, I mean, it is a little strange to start with a regulatory definition and then say, aha, this satisfies the statute when statutes usually precede regs and just in terms of order of operations, statutes are more powerful than regs. And so your argument starts with regs and says, aha, we've satisfied the statute instead of starting with statute and working down to regs. It fits together, but... Well, I guess I have a particular question here, isn't it? Whether you're starting with the statute or the regs. I mean, what... I'm not trying to lead the witness astray. I'm not sure whether it makes a difference which you start with, but I would point out that the regs preceded the statute. The FARs were in existence long before GARA came along. So when they drafted GARA, they knew exactly what manufacturers could do because those regs were already in existence and had been. So just to round out your point then, what you're saying is when Congress wrote in capacity as manufacturer, they were really informed by what manufacturer meant in this specific space... Absolutely. ...based on what the regs are. And so rather than look to maybe dictionary definitions or other understandings of manufacturer, the FAA is already telling you this is how we do it in the aviation space. Absolutely, Your Honor. All right. I have a little time left, but I just want to reiterate the background here. Plaintiffs have alleged nothing was done wrong at the rebuild. Plaintiffs' only case is for a design defect. The whole design should have been two mags instead of one. We get that, but the district court... Yeah, the district court didn't really address that. I understand. But the district court knew that because that was in the argument and there was testimony or there was argument. I understand all that, but the district court's entire opinion was tethered to GARA. I know. Right? I know, Your Honor. I wish the district court had addressed it, but I just want to reiterate that what the plaintiffs are trying to do in this argument is to artfully cast their claim so that it gets around GARA. And their claim is for design defect. And their experts only support that claim. Thank you. Thank you. I would like to start with turning to the language of the statute, 49 U.S.C. section 40101, which is the GARA statute of repose. Under the plain language of GARA, it states that no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of an aircraft or the manufacturer of any new component, system, sump assembly, or other part of the aircraft in its capacity as a manufacturer. And then it continues. The important word that, in addition to its capacity as manufacturer, is it limits liability to manufacturers of new components. There's no dispute that a rebuilt component is not the same as a new component. I think that's... Well, it's new to the aircraft, right? It's new to the aircraft, but it's not a new component. You can buy a brand-new Magneto or you can buy a rebuilt Magneto or an overhauled Magneto. A rebuilt Magneto is not the same as a new Magneto. But it meets all the specifications of a new Magneto, right? It does. It's... Theoretically, yes, it should meet all the specifications. However, it's using old components. So when you rebuild it, the mechanic works up the components. It cleans up the rotor assembly and puts old parts together and specifies it or certifies it to specification. But it's using older components. It's not the same as being a new... So the district court, in its opinion, talked about this kind of ship aethesia paradox. It's like, you know, Greek paradox. And the ship aethesia is being replaced. And is it the same thing? Is it the same boat? But what if... What if we didn't have quite that paradox but we had a Magneto that was half the original parts and then half new parts? Is that new? No, it's rebuilt. And it's actually, under the regulations, it is a separate distinction of being a new part or a rebuilt part. So... Back to what I asked you earlier, I think. Is it only a manufacturer can rebuild, right? That is correct. But GARA only protects manufacturers of new components, not rebuilt components. And there is a distinction under regulations in that the rebuild does use old parts and it's reworked by the mechanic under Part 43. Again, back to Judge Ross' point, it has to comply with the new regulations, the new thresholds, right? Not new regulations. It has to comply with the specifications. In specs. Right. Yes. But again, it's a part that was sold and rebuilt in 2002 and sold in 2002. GARA is not implicated because it's a rebuilt part. It's not a new part. The second thing I want to point out is when Congress authored the GARA statute, it did contemplate that there are activities that are incidental to manufacturers' roles as a manufacturer. In the briefing, I cite a case of Garcia v. Wells Fargo Bank, which is a 2011 Westall site 6257148. In that case, Cessna, the aircraft manufacturer, it sold, two years before the accident, various parts, including a Dash 7 actuator control unit, which plaintiffs allege fell. The court... But as your opponent has said, isn't your case a design defect in that case, saying that there should have been dual magnetos instead of a single one? And so what does it really matter what happened during the rebuild if you're saying it was the design of the magneto in the first place that is defective? In 2002, Continental, when they did the rebuild, they sold the parts that failed, notably the housing of the magneto and the rotor assembly. But you're saying it failed because there were no dual magnetos but a single magneto. Right? So what is the significance of what a single magneto did when you're saying it should have been a dual magneto in the first place? That is part of our allegation. However, we're also... Our claim is that the internal part of the rotating magnet inside the magneto is rubbing against the housing, which created basically a mistiming of the engine. So when the pilots had to have a demand for more engine power, it was not available to it because of the rubbing of the rotor assembly inside of the magneto housing. Because the magneto was improperly designed? Because the magneto was defective. That's all my time. Judge Roth, anything else? I have no further questions. Thank you very much. Thank you all. Thank all counsel for their argument and their submissions. We'll take this case under advisement.